NATIONAL SHIRT SHOPS, Inc., v. UNITED
STATES.

No. L–368.

Court of Claims.

May 2, 1932.

926

William J. Hughes, Jr., of Washington, D. C. (William E. Leahy, of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C. (Charles B. Rugg, Asst. Atty. Gen., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, WHALEY, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

This is a suit to recover income and excess profits taxes paid by the plaintiff for the taxable period ending January 31, 1919, in the amount of $55,986.84, with interest thereon from the date of payment.

The plaintiff during the period involved kept its books on the basis of a fiscal year

ending January 31. Under the regulations (article 25, regulations 45) it was required to make its tax returns on that basis, and the Commissioner of Internal Revenue was required by section 212 (b) of the Revenue Acts of 1918 and 1921 (40 Stat. 1064, 42 Stat. 237) to compute the net income in accordance with that system of accounting. The plaintiff did not make its tax returns on the basis of its fiscal year, but on June 16, 1919, filed its income and excess profits tax returns for the calendar year 1918, and on May 15, 1920, filed its returns for the calendar year 1919.

The calendar year returns for 1918 and 1919 could not be reconciled with the plaintiff's books, and in February, 1923, the Commissioner of Internal Revenue adjusted the calendar year returns for 1918 and 1919 to the basis of fiscal years ending January 31, 1919, and January 31, 1920, respectively, and assessed for the fiscal year ending January 31, 1919, an additional tax of $100,031.47.

On April 7, 1925, a warrant of distraint was issued against the plaintiff, and notice of levy was served on banks wherein plaintiff carried accounts. Immediate payment was demanded by the collector, and on April 10, 1925, plaintiff, protesting that collection of the tax was barred by the statute of limitations, made a cash deposit of $10,000 and posted a surety bond in the sum of $100,000 guaranteeing payment of the balance. The collector thereupon issued a certificate of discharge of the tax liens. Subsequently the additional assessment was satisfied in full by the abatements, credits, and cash payments set out in findings 12 and 13 of our findings of fact. Of the total amount ██ ██ additional assessment, only $55,986.84 is involved in this suit, the cash payments of $36,974.79 on December 28, 1925, $5,000 on February 19, 1926, $5,000 on May 3, 1926, and the credit of $9,012.05 of September 30, 1925. Finding 12.

The plaintiff contends the tax was collected subsequent to the running of the statute of limitations, as fixed in section 250 (d) of the Revenue Acts of 1918 and 1921 (40 Stat. 1083, 42 Stat. 265), and is refundable as an overpayment under section 607 of the Revenue Act of 1928.[1]

Plaintiff's contention is based on the as-

sumption the statute of limitations commenced to run against collection of the tax on June 16, 1919, the date on which the return for the calendar year 1918 was made. If the plaintiff is right in this contention, the five-year period in which collection could be made expired June 16, 1924, and the surety bond was posted after the bar of the statute had fallen on the collection of the tax.

The position of the government is that the statute of limitations against the collection began to run on May 15, 1920, the date on which the return for the calendar year 1919 was filed, and expired May 15, 1925. It is also contended the bond was valid and precludes recovery, even if the statutory period for collection had expired when it was filed.

██ Section 250 (d) of the Revenue Acts of 1918 and 1921 bars the collection of any tax after the expiration of five years from the date when the return was due or made. Since the Commissioner is required to compute the net income upon the basis of the taxpayer's annual accounting period, fiscal year or calendar year, as the case may be, a return, sufficient to start the running of the statute of limitations, must be one that covers the entire taxable period. Where there are two returns, each covering only a part of the taxable year, both of which are necessary to a correct computation of the net income and the tax liability for such taxable year, the statute begins to run from the date of the last return. Paso Robles Mercantile Co. v. Commissioner (C. C. A.) 33 F.(2d) 653, 654; P. L. Mann v. United States, 44 F.(2d) 1005, 71 Ct. Cl. 31; American Hide & Leather Co. v. United States, 48 F.(2d) 430, 71 Ct. Cl. 114.

In Paso Robles Mercantile Co. v. Commissioner, supra, the court said: "That under the circumstances the petitioner did not have the legal right to make returns for calendar years is virtually conceded. Article 25 of Regulations 45, among other things, provides: 'A taxpayer having an existing accounting period which is a fiscal year within the meaning of the statute not only needs no permission to make his return on the basis of such a taxable year, but is required to do so, regardless of the former basis of rendering returns.' If that be true, and petitioner was bound to make return for the year ending January 31st, it could not expect an assessment until a return was in for the whole of that year. True, a return purporting to cover the tax year, if merely erroneous or defective, may start the running of the statute; but where there are two or more returns each of which covers only a part of the year, and

---

[1] Section 607: "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after May 29, 1928) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." 26 USCA § 2607.

all of which the Commissioner must have before he can intelligently determine the net income for such year and make the requisite assessment, it would be unreasonable to hold that the statute begins to run before the last one is in, and he is thus for the first time enabled to perform his duty."

The plaintiff contends that the opinion of the Circuit Court of Appeals in Paso Robles Mercantile Co. v. Commissioner, supra, and the opinion of this court in Mann v. United States, supra, are inapplicable to the question presented in this case whether the calendar year 1918 return filed June 16, 1919, apparently after an extension of time, was a return for the fiscal year ending January 31, 1919, and, therefore, sufficient to start the running of the statute of limitation for the assessment and collection of any tax due for the fiscal year ending January 31, 1919. The plaintiff undertakes to distinguish the Paso Robles Mercantile Co. Case on the ground that with respect to that taxpayer the Commissioner of Internal Revenue assessed the tax for the fiscal year on the basis of the two calendar year returns by taking eleven-twelfths of the tax from the first return and one-twelfth from the second return, whereas in the present case the Commissioner did not compute the tax for the fiscal year by that method, but on the basis of actual income shown for the fiscal year beginning February 1, 1918, and ending January 31, 1919, as disclosed by the company's books when examined by the revenue agent; and that the decision of this court in Mann v. United States, supra, in which the court held that the calendar year 1919 return was the return for the fiscal year ending January 31, 1919, was based on the decision of the Court of Appeals in Paso Robles Mercantile Co., supra.

Plaintiff further insists that in the Mann Case the Commissioner of Internal Revenue treated the calendar year 1919 return as the return for the fiscal year ending January 31, 1919, whereas in the present case he acted upon the 1918 calendar year return as the return for the fiscal year ending January 31, 1919. In Mann v. United States, supra, and in American Hide & Leather Co. v. United States, supra, this court squarely held that the calendar year 1918 return was the return for the fiscal taxable period ending January 31, 1918, and that the calendar year 1919 return was the return for the fiscal year beginning in 1918 and ending the calendar year 1919, and this is true independently of the method employed by the Commissioner in determining the tax due for the fiscal taxable period of less than twelve months and for the subsequent taxable year. The limitation period within which the Commissioner may assess a tax for the fiscal taxable period in 1918, or a subsequent fiscal year, begins to run from the date on which the return, which is to be regarded as the return under the statute, for such taxable period is filed. The Supreme Court, in the American Hide & Leather Company Case, did not disturb the holding of this court that the calendar year returns were returns for the fiscal period, or year, ending within the calendar year for which such returns were filed, but held that, for the purpose of computing the statute of limitation within which a claim for refund could be filed, the date on which the returns for the fiscal period, or year, were due should be used instead of the earlier date on which the calendar year returns were filed. In the Mann Case and in the American Hide & Leather Company Case the taxpayers' books were kept on the fiscal year basis, as were those of the plaintiff, and in those cases the Commissioner of Internal Revenue determined the tax for the fiscal year beginning in 1918 and ending in 1919 on the basis of the net income shown by the books. The calendar year returns in those cases and in the present case did not purport to be returns for the fiscal year ending in a calendar year subsequent to the calendar year for which they were filed. The contention of the plaintiff overlooks the fact that by treating the calendar year 1918 return as the return under the statute for the fiscal year beginning in 1918 and ending in 1919, the taxpayer would be left in a position of having filed no return for the fiscal taxable period of less than twelve months under section 226 of the Revenue Act of 1918 beginning January 1, 1918, when, as a matter of fact, the taxpayer had filed a return for that period when he made his calendar year 1918 return.

The Revenue Act of 1917 did not require that returns be made in accordance with the method of accounting employed by the taxpayer, i. e., fiscal year or calendar year, but under that act a taxpayer was permitted to file calendar year returns, even though its books were kept on a fiscal year basis. The Revenue Act of 1918, § 200, required that the return be made on the basis of the fiscal year or calendar year, according to the method of accounting employed by the taxpayer. Therefore, taxpayers who kept their books on a fiscal year basis and filed calendar years returns for 1917, 1918, and subsequent years were required to make a return for the fiscal taxable period January 1, 1918, to the end of the fiscal year beginning in 1917 and ending in 1918 and for each fiscal year of twelve months thereafter, unless the method of ac-

counting should be changed with the approval of the Commissioner. Appeal of Weed, 2 B. T. A. 84. For the purpose of the statute of limitation, therefore, the calendar year 1918 return was the return for the fiscal taxable period falling within that calendar year. The contention of the plaintiff, therefore, that the calendar year 1918 return was the return under the statute, for the fiscal year beginning February 1, 1918, and ending January 31, 1919, is without merit.

The statutory period of limitation on collection of the tax due for the fiscal year ending January 31, 1919, therefore expired on May 15, 1925, which date was five years after the date on which the calendar year 1919 return was filed. The surety bond was filed April 10, 1925, within the period collection could be legally enforced. By giving the bond plaintiff avoided the immediate collection of the tax through the distraint proceedings then pending and secured further time in which to contest the validity of the tax. The bond operated, not only to postpone the collection of the tax, but also to suspend the running of the five-year statutory limitation on the collection of the tax. United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743.

The bond constituted a separate and distinct agreement, voluntarily entered into between the plaintiff and the government at a time when collection of the tax was legally enforceable, which took the place of their rights and privileges under the limitations of section 250 (d) of the Revenue Acts of 1918 and 1921. Through the promise and agreement represented by the bond, the rights of the parties under the revenue laws were postponed and incorporated in the bond which insured the payment of the tax. United States v. Onken Bros. Co. (D. C.) 23 F. (2d) 367; George A. Mendes & Co. v. Bowers, Collector (D. C.) 21 F.(2d) 1008. It is immaterial whether the subsequent payments were made in satisfaction of the tax or of the bond. Mascot Oil Co., Inc., v. United States, 42 F.(2d) 309, 70 Ct. Cl. 246, affirmed 282 U. S. 434, 51 S. Ct. 196, 75 L. Ed. 444.

In view of our decision that the surety bond was filed before the statute of limitations had expired on the collection of the tax, it is not necessary to discuss either the plaintiff's contention that the bond was secured by duress, or the defendant's contention that the bond was valid, even though filed after the expiration of the statute.

The petition will be dismissed. It is so ordered.